and all, will argue 15 minutes for the plaintiff, 15 minutes to be chaired by the defendants. They are going to share five minutes each. Good morning, your honors. I'm Charles McFarland, I represent Gary Dressler and I'd like to reserve five minutes for rebuttal. This is a case where a person walked into a Kroger store, not violating any laws whatsoever. He'd been doing that for years and all of a sudden somebody decided because he was open carrying a weapon, which Kroger allowed through their policy, and which Ohio State allows through 9.68, they decided they didn't want him in so the security guard on his own, without consulting with the Kroger company, decided that he had to take his gun and put it in his vehicle. This case should have been judged by the contemporaneous facts, which were the arrest report, the SEB report, which is the incident report, and the CAD report, which is the telephone report to the police. All of those show that he was asked to leave because he was open carrying. This was also confirmed by Officer Zucker at the trial and these documents plus Mr. Zucker's testimony at trial make it clear that the security guard's belated argument that he wanted him out because of his demeanor was not true because that was a belated argument that wasn't raised until 18 months after the fact. What do we do with the fact, you may be right about all of that, what do we do with the fact that the security guard is, by almost all of our precedent, in a situation similar to this, not a state actor? So his actions are irrelevant. That's not true because he asked the police to arrest him. But that happens all the time in America. But wait a minute, our published precedent says, I understand, our published precedent says that simply asking for arrest doesn't make someone a state actor.  The case law in Ohio and federal court is that the person can give information to the police officer. But once he engages the police officer, he's crossed that line. In this case, he engaged the police officer by lying to the police officer, stating that there was no sign, that there was a sign, excuse me, there was a sign that prohibited him from being in the store. And there was no sign. So he lied to the police officer. So why does that make him a state actor? Because then he engaged the police officer by saying, after everybody knew there was no sign there, he still wanted him arrested. That is not just giving information. He engaged him. So in Durante v. Fairline, private security guards searched a customer, took his money, arrested him, detained him, and transported him to the police station where he's booked for criminal trespass. Sounds like a lot more than your guy did. And they said that they were not a state actor because there was no preexisting agreement with the government. Well, a preexisting agreement is not the same thing. It's telling the government a lie, getting them to believe it, and getting them to arrest him based on that lie. So you're saying by lying to the government, you become a state actor? Oh, yes. And what case, I'm sorry to interrupt you, but what case do you have for that proposition? That by lying to the government, you become a state actor? I have no case for that because I'm saying that lying to the government is engaging the government by actually lying to them. He did two things. He lied to the government or he lied to the police, and he told them to arrest him and there was no grounds for the arrest. That's engagement. He did more than just provide information. What about that Meyer case, which is Boykin v. Van Buren, which is published, where they said someone stole a drill. I think it was a drill. You can correct me if I'm wrong. And they called the police. The police found him, brought him back to the store. So they misrepresented the police and he said, wait a minute, I prepaid for this. And they said, and the store admitted he prepaid for it. Why isn't that? That seems to me a misrepresentation to the police, and yet we said no state actor. Okay, in that case, it was a mistake where the security guard didn't know the actual truth. In this case, the security guard did know the actual truth. There's a big difference between making a mistake and telling the police officer something's wrong and it being a mistake, and another thing, to tell the police officer something's true when he knows it's not true. A big difference. But why couldn't you just sue him for a state law tort versus... Well, the state law tort is in there. I understand that, but then why torture the state actor doctrine to say lying is somehow unique? Because I just can't see the scenario where every lie to a police officer converts someone into a state actor. Well, if I hear you correctly, what you're saying is permissible to lie to the police. That's actually a crime. Sure. And so they can prosecute and they can do all those things, but by lying, you don't become a state actor. I don't have an answer to that other than the fact that the research I did indicates when they give just information to a police officer, they're not a state actor. But when they go beyond just giving information like lying and asking the police to do something that they're not allowed to do, that is engaging in... But you don't have a case for that problem. No, I don't. All right. Thank you. But there is a situation. All of these issues that were raised are very closely associated. They're closely related, and especially the first two. And the first two deals with whether the judge was correct in introducing a 911 emergency call, which was not in the record. And the second is the issue of probable cause. So I want to first address this issue of a 911 call, whether it was an emergency call or not. First of all, police have to investigate any call. In this case, there was no record of a 911 call. There was a record of a call. Whether it was a 911 emergency or not, we don't know from the record. However, even if there was a 911 call, the police officer testified at 12, they did not treat it as an emergency. So the exigent circumstances that the judge relied upon were not there in this case. Now, the defendants relied on Rivansky, and Rivansky made it clear that they have to do an investigation. They can't just decide that there's a problem there. They can't turn a blind eye to the situation. In this case, we have a situation where the law says under 9.68, you cannot keep somebody from open carrying a weapon unless Congress says so or a statute says so. The only statute in Ohio that says that you cannot have a gun in, open carry a gun, in a store is this section I quoted, I think it's 2923.126. In that section, it talks about they have to post a sign. So if they don't post a sign that they don't want a gun in there, that means a gun is allowed. But doesn't a store like Kroger, private landowner, private party, have the right to revoke what is I guess a business invitation. I mean, Mr. Dressler is a business invitee, I suppose, to the store. Upon reasonable notification to a guest, can't the owner simply revoke that open invitation to go. Oh, that's an excellent question. Well, I'm not so worried about it being an excellent question. I just want to know what the answer is. The answer to that question is a resounding no. And why is that? The reason is because the very cases that were cited by the defendants, the city of Cleveland versus Dickerson, and this Schaefer Heights versus Marcus case, those two cases seem to say that they don't have to give you a reason for asking you to leave. They have to give you notice. Well, Dickerson didn't say that. They said no reason. Well, Dickerson was not based on Ohio law. Ohio law has specific rules for business invitees. There's three different categories. Okay, that's what Ohio law. So Dickerson ignored those five laws. Anyhow, Dickerson in itself was a loitering case, which falls under the reasons for revoking. The Schaefer Heights versus Marcus case did say they could tell you. But Marcus went to 1983 action or filed a suit in a later case called Marcus versus Redco. They came out and came up with the argument you're talking about, a reasonable explanation. But this is a quote from the case. This right to exclude, however, is not absolute, for such exclusions may not violate the law. So we have a 9.68 statute in Ohio that allows people to carry unless some law says they can't. And when the security guard comes in and says you can't carry this in here, he violated 9.68. When the police officer agreed with him, he was violating 9.68. And what makes this more egregious is the police officer knew there was no sign there. And he lied about it in court. Can I ask one question about 9.68? I'm sorry. Doesn't that provision only prohibit the state from passing ordinances, rules, and regulations that inhibit an individual's right to bear arms? It doesn't say that in the statute. It just makes a blanket thing. A person is not a, not, I can, it doesn't make it like that. A person cannot be inhibited. But in. But I thought it prohibits the state. It doesn't say that in the statute, Your Honor. And here we have a police officer that's saying you can't have a gun in the store.  Thank you, Your Honor. All right, thank you. Good morning. May it please the Court. Chief Judge Cole. Public Counsel. My name is Ian Mitchell. I'm an attorney for two of the appellees in this case, Bradford Rice, the private security guard, and his employer, the private security guard company, Safe Environment Business Solutions. With the Court's permission, I'm only going to be reserving five minutes of the 15 minutes allotted overall to the appellees today to speak to specific issues related to my clients. For the reasons articulated in our brief, we respectfully request that this Court affirm the judgment of Judge Barrett and the U.S. District Court below to grant a summary judgment in favor of Mr. Rice and SEB, as I'll refer to them throughout the argument today, for three primary reasons. First, as Judge Thapar indicated in the initial argument with counsel for the appellant, Mr. Rice is unquestionably not a state actor. He's a private citizen and not subject to liability under 1983 unless he satisfies one of the three tests established by this Court in Wolofsky v. Hoon, which is a very high bar for him to have. Was he wearing, just out of curiosity, an SEB uniform? I'm sorry, I can't remember. He was, Judge Thapar. He was wearing a utility belt with a holstered sidearm and also a patch on his work shirt, his security guard work shirt, that indicated he was the SEB security guard, Your Honor. So as I mentioned, Mr. Rice is unquestionably not a state actor in this case and should be not subject to Section 1983 liability for that reason. In addition, appellant has not provided sufficient evidence to establish that a conspiracy was implicated under the circumstance of this case. Again, Judge Thapar, as you indicated in the initial discourse with counsel for the appellant, the act of simply relaying information to a police officer, albeit related to a potential criminal trespass, even if it were to go so far as to request an arrest of an individual, would not satisfy. Was he mistaken about the sign? Did it say serving alcohol? It did, right? Correct, Your Honor. There are two different signs under Ohio law that you can place at the front of the storefront related to firearms. The one is simply a blanket prohibition on all firearms, which is indicated by a red circle with a line through it. And then the second sign, which was actually present at this Kroger, related to possession of a firearm while consuming alcohol on the premises. And no one was consuming alcohol at Kroger? I've never been to a Kroger where people consume alcohol. Is that accurate for this one? Judge Thapar, I regret to inform you that wine tastings now take place at Kroger, and potentially even liquor tastings, depending on the location that you're at. So was it happening at this one? I know that they did occur at this particular location. I don't believe that we have any evidence in the record to indicate that it was occurring at this moment. So based upon what is in the record, I believe it's... So at all other occasions you would be allowed to carry a firearm? That's correct, Your Honor. So then why did he have him arrested? Why not let him go at that point? Well, for the reasons articulated in our brief, Judge Thapar, the reason that Mr. Dressler, the appellant in this case, was stopped at the front of the Kroger was not simply because he was open carrying a firearm. In fact, as the testimony indicated, Mr. Dressler was a weekly patron for multiple years at this particular Kroger and had never been stopped on any occasion by Mr. Rice or any of the other SEB security guards. On this particular occasion, it was simply because he had a concerning demeanor to Mr. Rice based upon the fact that he was walking extremely fast into the store, he had a hat down over his eyes, and seemed to be sort of briskly moving into the store and cause sufficient concern. That sounds like the way I do it when my wife orders me to get something, so I don't understand why he's any different at that point. Frankly, Your Honor, I think that's just a judgment call for a security guard at the moment to... Really? So someone going fast into a store with a baseball hat is a security risk such that... So he told him he was excluding him because of the gun, not because of the security risk. Well, that's not exactly accurate, and Counsel for the Appellant misrepresented the record in terms of the reasoning that was provided to Mr. Dressler at the time as to why he was being asked to leave the store. Remind me of the procedural posture when this was dismissed. Excuse me? Was it summary judgment? Summary judgment, yes. And so the facts are viewed in the light most favorable to the plaintiff, correct? That's correct, Your Honor. And so why isn't that a fair reading of the record? Well, for two reasons. Number one, the factual indications provided by the appellant in their briefing is inconsistent with some of the video recordings that were taken from the store at the time. So Mr. Dressler has argued that there was no conversation, there was no attempt to stop him going into the store. But I thought you didn't contest he was deaf in the left ear or something to that extent. In the criminal case, he presented expert testimony indicating that he did have some deafness in his left ear. And frankly, Your Honor, I would just suggest that that is unnecessary for the determination today as to whether or not he actually heard him. It was simply that the security guard made that attempt. And that was the information relied on the police officers. I realize that I'm out of my five minutes. Let me just ask one thing here. Yes, Judge Boyle. Does Ohio law permit a private place of business to ask a person carrying a firearm to leave the premises? That's correct, Your Honor. So Ohio law... Correct. Excuse me, I'm sorry? No, I'm saying does Ohio law permit a private business to ask a person carrying a firearm to leave the premises? Yes, Your Honor. It's a discretionary choice that a business operator may make as to whether or not to exclude firearms from the premises. Even if they don't post the signage that specifically excludes firearms from the private property, they can nonetheless reject an entrant based upon that criteria or other criteria. Well, if the store had a right to ask him to leave because he was carrying a firearm, then that sign posted out front is irrelevant. That's correct, Your Honor. All right. Thank you, Judge. Thank you. Thank you, Your Honors. My name is David Oberle. I represent Appley's Kroger Limited Partnership I, the Kroger Company, Pierce Bryant, and Larry Noshank. I think for the Kroger Appley's, the most important aspect of this appeal is where Kroger fits in in the timeline of events underlying Gary Dressler's arrest. Importantly, Dressler acknowledges that Kroger does not fit into this timeline until after he was arrested. Specifically, Dressler acknowledges that Larry Noshank, the only employee that was involved from Kroger in the arrest, had no involvement in any of the events either leading up to the arrest or the arrest itself. I thought he asked for him to be arrested. Am I mistaken about that? This is not until only after Dressler was arrested and placed in the back of a police cruiser. But the officers confirmed with him that he wanted him arrested, right? That's one version of events. Mr. Dressler sets forth a couple different versions of events, but that is one of them that Noshank confirmed that he wanted Dressler prosecuted for criminal trespass. That's only after the arrest was complete and he was back in the back of the police cruiser. So with him having no involvement in the arrest itself and no interaction with these officers until the arrest was complete, any violation of his Second Amendment rights would have been completed by the time Noshank ever became involved in the subject incident. At the most, I think the most reasonable reading of the record is that Noshank's involvement entailed confirming with the responding officers that he did not want Dressler back in the store after the subject incident. So can I ask you about Kroger's policy? Is it correct that Kroger posted the sign that while serving alcohol, no guns, but they allowed it at other times? I'm unsure as to that policy. I believe that's the case, but I'm not 100% certain. But I think that the posting of the sign is irrelevant to this analysis because if you look at Dressler's, Rice's rationale for removing Dressler from the property, instructing him to leave the property is only after his suspicious and aggressive behavior and demeanor towards Rice during Rice's interaction with Dressler that Rice finally instructed Dressler to leave the property because he thought he was a threat to safety. The Tohono O'odham District of Ohio in Kirkland v. Lucan held that committing turbulent conduct and behavior constitutes immediate lawful grounds to revoke an individual's privilege to remain on the premises. So regardless of whether there's a sign there, based on the actions of Dressler in interacting with Rice, Rice had reasonable grounds to instruct him to leave the premises. I wasn't exactly sure about your answer to Judge DePard's question. Does Kroger have a policy on the open carrying of firearms in its stores? Does the store have a policy at that time? At the time there was an informal policy of allowing open carry, but there was also a clear policy that security guards were in no way to approach customers if they were open carrying, which would be consistent with their policy of allowing open carrying. Not to approach customers who are open carrying. Did you violate your policy then? Rice may have, but he would have been at most an agent of Kroger. And if we go down that road, then he was clearly acting outside the scope of his authority as an agent of Kroger. And under that, if we go down that road, then Kroger can't be held liable for Rice's actions when he's acting outside the scope of his authority. Shouldn't there be an issue of fact decided by a jury? I don't think there's any issue of fact that needs to be explored there. At least in terms of Kroger's perspective, if Rice went and instructed Dressler to leave the property because of his aggressive demeanor and behavior, then he was acting lawfully, and the entire event through the arrest was lawful. Am I wrong that the facts viewed in the light most favorable of the plaintiff indicate that when he came into the store, he told him something to the effect that you're not allowed to have a firearm in here and you can't come in? Rice told Dressler to remove his firearm, take it back to the store, take it back to his car before he could shop again. So he violated Kroger's policy at that point? He violated Rice's instructions. No, no, Rice was violating Kroger's policy? Correct, yes. Okay, thank you. Are there any more questions? Apparently not. Thank you. Okay. I think we have one more lawyer to argue. May it please the Court, Chief Justice Cole and members of the panel, I'm Marva Benjamin. I am representing the city defendants, and I am including Jeffrey Blackwell in that his counsel is present and has given me permission to speak on his behalf as well. Just so we're clear, Your Honor, this is not a Second Amendment case from the city's perspective. This is a criminal trespass case, and there is no clearly established constitutional right to remain on private property when an owner has asked you to leave. This is private property. This is not public property. Let me ask. Let's set the Second Amendment aside for a second. Viewing the evidence in the light most favorable to the plaintiff, they asked him to leave because he was carrying a firearm, correct? I don't know that to be true. I know that the firearm was part of the totality of the circumstances behind asking him to leave. He was originally asked to place his firearm in his vehicle and come back in and shop because, according to Mr. Rice, he didn't like the way Mr. Dressler responded when he first approached him. Let me give you a hypothetical then. It will be easier. What if the officers could determine, someone says, arrest him for criminal trespass because he did X, and the person says, wait a minute, there's a sign that says I can do X. They go look at the sign. The sign says they can do X. Aren't the officers then arresting him without probable cause? No, and I'll tell you why. In this particular situation, we are on private property. When an owner of this private property has asked you to leave because it's Yellow Shirt Day and you're wearing a red shirt, whatever reason, they've asked you to leave. Can they ask me to leave because I'm Asian? Can they ask you to leave because you're Asian? Now we're talking about racial discriminatory reasons for which you could sue the store, but we are not talking about whether the— Wait a minute, can the officers then arrest me because I went into Kroger while being Asian, and they ask me to leave because I'm Asian, and they say we want him arrested because he didn't obey our order to leave the store? No, I don't believe they can do that. Can they ask me to leave because I'm Muslim? No, but however, they can arrest you if they believe that there is going to be a threat of danger if they don't take action. See, what this court needs to understand is this wasn't just a situation where he was arrested because he was on the property. I'm sorry, but what you were saying is the private business can exclude anyone for any reason. We both agree that can't be the standard. It can't be a racially based reason, no. So perhaps I'm taking it a little too far when I say that. What I should indicate to the court is they can ask you to leave and you need to leave. Can they violate the law in asking you to leave? Absolutely not. But in this particular situation where, and I'm representing the city. An officer comes. The plaintiff's facts are viewed in the light most favorable to the plaintiff. And so if we do that, the plaintiff's allegation is they're violating Ohio law and my rights when they ask me to leave. And we both agreed that because your rights are protected, they can't violate your rights in doing so. That that's a problem. Well, first of all, they weren't violating Ohio law. Second. Okay, explain that to me. Because he says they're violating 9.68. Well, 9.68, and I'm going to refer the court to what the district court indicated, and it was actually a good point. He's bringing a 1983 action. A 1983 action vindicates federal law. It doesn't vindicate state law. And so a 1983 action would not be appropriate if he's claiming that his right was violated under 9.68. But that could be wrong, right? Because probable cause, here it's a state trespass. And so the probable cause is under state law. And so you look at state law to see whether it's a state trespass. You do look at state law. But in this particular case, he's bringing a federal lawsuit and indicating that the police officers violated 9.68. What I would indicate to the court is where is there a clearly established law in place for police officers to know, or for any lay person to know, that a private owner does not have the right to exclude someone from their private property with a gun? If you come to my home with a gun, I'm going to believe I have the right, if I choose to, to tell you to leave. And so when the officers respond to this place, and I'm out of time. You may finish. When the officers respond and they encounter Mr. Rice who said, I told this man to leave and he won't leave. Mr. Rice is standing there not leaving and he's arguing. Now you've got two men standing there with a gun. What is the police going to do at this point? Leave? And as the district courts pointed out, if the officers just would have said, well, hey, I don't know what Kroger's policy is, so I'm leaving, and there would have been a shootout, now the officers have to explain why they didn't take action. So I'm standing here for the court to consider that the city defendants have qualified immunity because there was no clearly established law in place that would tell them that this business owner did not have a right to exclude Mr. Dressler. Okay. Thank you, Counsel. In answer to your question, Mr. Thupper, Judge Thupper, there is a case that says that if a private party has conspired with state officials to violate constitutional law. You said they lied to them. You don't conspire with them when you lie to them. Well, you conspire with them when you tell them there's a lie and then the police officer agrees with that lie, and then they arrest him based on that lie. That is conspiracy right there. And the second thing I wanted to point out is the last argument that Ms. Benjamin made. Let me ask you this, though. When do you claim the agreement was formulated? What's the basis for the conspiracy? Cops are called and they show up there. How did the conspiracy arise? It arose because Mr. Rice did not want Mr. Dressler in the store with an open carry. He lied to the police officers about it. The police officers agreed with him even though they knew it was a lie, and then they turned around and arrested him knowing that the- They knew what was a lie? That he was allowed in the store open carrying. He told the police officers they weren't allowed. He wasn't allowed in the store. Now, I do want to mention the last argument that was made dealt with private property, not a business owner. Ohio has very clear law, case law, on business owner invitees and violating or revoking business invitees. And the issue of whether Mr. Dressler walked quickly, the United States Supreme Court case says, quickly is an incoherent and unparticularized suspicion of a hunch. It is not enough to claim somebody's suspicious because they do something. That's not what the law is. They have to be doing something. They quoted a case that talked about being violent. He wasn't violent. It was just somebody's perception of him that they thought maybe he was walking too quick. I also wanted to point out that the Marcus case, which cited Marcus v. Ravko, makes it very clear, very, very clear, that there is no absolute right to tell somebody that's a business invitee they can't come in. Yes, they had that right, but they can't do that in violation of the law. And when they did that in violation of 9.68, that doesn't apply to them anymore. And if you look at the case law that's cited in the brief dealing with business invitees, you don't have an absolute right in the state of Ohio to tell somebody, we don't like the way you look, we don't like the way you're acting. There's got to be some kind of violation of the law. There's got to be some kind of violence. There's got to be some kind of going in some area where you're not supposed to be. And that sign is under the law. If a business owner does not want somebody in the store with a sign, he's got to put up a sign. It's not irrelevant. In fact, the sign that was up specifically tells you that we are allowing open carrying, but you can't come in if there's wine tasting going on. And that broker does have wine tasting occasionally, but they didn't on that day. Well, you know, Section 9.68 only says a person can keep a firearm or their ability to do so cannot be impeded. It doesn't say anything about a person with a firearm has to be permitted on private property if the owner doesn't want that to happen. Aren't you stretching things a little bit here? Well, when I read 9.68, I don't remember specifically what it said, but it said the person cannot be restrained from anything unless it's required by law. Okay? It can't be restricted. That's what it says in plain English. No, that's not what it says. It says a person without further license, permission, restriction, delay, or process may own, part of a firearm, its components, and its ammunition. It doesn't say anything about being able to take a firearm anywhere you want to or that the private property owner can't ask you to leave because you've got a firearm. It doesn't say anything like that. Well, I beg to disagree with you, Your Honor. I just read the language. It doesn't say what you said it says. Okay. I beg to disagree with you, Your Honor. I believe that statute says that you cannot be told by anybody you can't carry a firearm unless the statute says that they can tell you that. What's the language in the statute that you're claiming says what you just said? Hang on a second. I don't have it right at my fingertips, but when I read it, it made it clear to me that a person with a firearm can go anywhere he wants to as long as the law allows him. In 9.6, the state allows him. Second Amendment allows him. And that's the way I understood that law. Okay. Thank you, Your Honor. Time has expired. Counsel, all four of you, we thank you for your arguments this morning. The case will be submitted. That completes our oral argument calendar.